IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN DURHAM JR., | ) | C.A. NO. 04-297 ERIE |
| Plaintiff | ) | District Judge McLaughlin |
| V. | ) | |
| | ) | |
| CITY AND COUNTY OF ERIE, | ) | |
| ET AL.       Defendants. | | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

On October 6, 2004, Plaintiff commenced a civil rights action against Defendants pursuant to 42 U.S.C. Section 1983. This action resulted from the denial of constitutional right to a fair trial; failure to train or supervise police officers; malicious prosecution; selection of a bias jury; introduction of false evidence; making defamatory statements to a Erie newspaper; involvement in extortion; and state tort claims.

## II. STATEMENT OF UNDISPUTED, OR INDISPUTABLE, FACTS

On the morning of January 23, 1996, Erie police knocked on the door of Plaintiff's home and were promptly admitted in by Plaintiff. The officers inquired as to the owner of the Oldsmobile parked in front of Plaintiff's house. Upon responding that the car was his, Plaintiff was arrested.

On April 30, 1996, s state writ of habeas corpus was held pursuant to a recantation document by the prosecutrix that Plaintiff had not committed any criminal act against her. That she went to the prosecutor's office and personally told Christopher McElynn that she made an honest mistake. Further testimony at this habeas hearing revealed that the prosecutrix had on several occasions extorted money from Plaintiff's family, and that McElynn condoned this malicious action to assure favorable testimony at Plaintiff's criminal trial.

On July 9, 1996, Plaintiff's criminal trial commenced. During the trial, McElynn

1.

presented false testimony of a DNA match to the jury. Stating that the results of the DNA show that there was a 1 in 5.5 billion chance that someone other than Plaintiff deposited the semen allegedly found in the prosecutrix. That there was a match. Subsequently, offering the same from Defendant Tackett, a forensic scientist for the Erie Police Department. However, the DNA report was "inconclusive" due to insufficient high molecular weight DNA and "inconclusive" in other key areas of the report. However, this information was never made known to the jury that the DNA evidence did not **match** Plaintiff.

Moreover, McElynn failed to provide all DNA materials and results in his possession. The entire rape kit evidence taken of Plaintiff and the prosecutrix on January 24, 1996, was suppressed or destroyed. The complete DNA test results taken February 22, 1996, was suppressed or destroyed. The clothing of both, Plaintiff and the prosecutrix were DNA tested and the results were suppressed or destroyed. The DNA test results of the crime scene (Plaintiff's car) was also suppressed or destroyed. Lastly, McElynn suppressed statements of the prosecutrix, Copra Ann Howard and Trina, Hayes Jordan, Henry Johnson, the 911 call to Erie police, hospital records and statements, and Lab test results from Lawerance Park Lab.

It is undisputed that McElynn manufactured false evidence of a gun alleged used by Plaintiff and exhibited to the jury. And presented false statements concerning the gun to the jury from Erie police officers, violating Plaintiff's right to a fair trial.

It must be further noted that McElynn violated Plaintiff's right to a fair trial when selecting a biased jury, despite an affirmative response from the jury of their biasness.

It is undisputed that McElynn made false and defamatory statements against Plaintiff in the Erie newspaper. That such statements represented to the public that Plaintiff was mentally and morally corrupt.

Approximately six-days after Plaintiff's arrest on January 23, 1996, Erie police gained forcible entry into his home without a search warrant, nor affidavit of probable cause. According to the officers testimony, while illegally searching upstairs, they found a gun inside the closet.

Defendant Judge Anthony violated Plaintiff's right to a fair trial by allowing false statements from Tackett and McElynn that DNA evidence **matched** the Plaintiff; and allowed a

biased jury to render a verdict against the Plaintiff.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986).

### IV. ARGUMENT

#### A. Prosecutorial Immunity:

Seemingly, McElynn is arguing that the Seventh Circuit's conclusion in Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir.1994)("Buckley III"), overrules the Supreme Court's holding in Buckley v. Fitzsimmons, 113 S.Ct. 2606, where the Court made perfectly clear that prosecutors were not entitled to absolute immunity on the claim that they knowingly obtained false statements from a witness for the purpose of prosecuting the plaintiff. Noting that shopping for a dubious expert opinion was unprotected by absolute immunity. Again relying on Buckley, the Court also ruled that the defendants did not have absolute immunity for comments made to the media. See,e.g., Milstein v. Cooley, 9th Cir., No. 99-56682, 7/20/01 (without discussing the underlying merits of the action, the court decided that the prosecutors are not entitled to absolute immunity with respect to allegations that they solicited false evidence against the lawyer-plaintiff, and made defamatory comments about him to the media). See also: Donahue v. Gavin, 280 F.3d 371 (3rd Cir.2002).

Obviously, the Defendant is confused ... the Supreme Court's holding in Buckley is still law.

### a. State Law Claims

The language of the Political Subdivision Tort Claims Act ("PSTCA") is clear and unambiguous. It hold that PSTCA strips immunity for intentional torts from all employees of local agencies, without making any distinction between those employees who are **"high public officials"** and those who are not. Brown v. Muhlenberg TP., 269 F.3d 205,214 (3d Cir.2001); Weinstein v. Bullick, 827 F.Supp. 1193,1205 (E.D.Pa.1993). Malicious prosecution is an intentional tort that falls within 42 Pa. Cons. Stat. Section 8550. Therefore, McElynn does not have immunity from Plaintiff's malicious prosecution claim. See: Russoli v. Salisbury TP., 126 F.Supp.2d 821,870 (E.D.Pa.2000).

Moreover, a section 8550 would permit a defamation action based on malicious publication to be brought against a local agency employee. Russoli, at 871.

## B. City and County of Erie:

In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Court established that municipalities are "persons" subject to suit for section 1983 purposes, however, the resulting liability is not without limits. Unless the plaintiff can demonstrate the existence of an affirmatige policy of the type at issue in Monell, the plaintiff must assert that the municipal defendants followed an unconstitutional custom.

The Third Circuit has articulated the difference between section 1983 liability based on policy and 1983 liability base on custom as follows: policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action, issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices are so permanent and well settled as to virtually constitute law. Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir.1990). While a plaintiff does not have the burden of identifying a single individual who established a given policy, he must identify a particular practice that is *"so permanent and well-settled as to have the force of law."* Turner v. City of Philadelphia, 22 F.Supp.2d 434 (E.D.Pa.1998).

In this case, Defendants McElynn and Anthony violated Plaintiff's constitutional right to a fair trial, resulting in malicious prosecution. The Plaintiff was arrested, charged, prosecuted, and imprisoned for rape and related charges based on evidence which the Defendants knew to be tainted, falsified, or otherwise unreliable. The Defendants maliciously deprived Plaintiff of his right to a fair trial when denying or causing the denial of the right to counsel to assist in his defense at Plaintiff's criminal trial.

Moreover, based on the trial transcripts, several jurors responded clear and convincing that they had fixed opinions as to Plaintiff's guilt when questioned by McElynn during voir dire. Despite this admittance by jurors, Defendant Anthony allowed a biased jury to render a verdict against the Plaintiff.

Circumstances exist to further demonstrate that Anthony followed an unconstitutional custom when not insuring that any and all scientific testimony and evidence admitted is not only relevant but reliable. The DNA evidence presented was tainted and the testimony presented to the jury of a DNA match as contained in the report was false. See: McMillian v. Monroe County, Ala., 117 S.Ct. 1734 (1977).

### a. Failure To Train

A municipality's inaction, specifically its failure to train or supervise officers adequately or failure to respond to complaints about the allegedly unconstitutional acts of officers, can also be an official policy subjecting it to section 1983 liability. Russoli v. Salisbury TP., 126 F.Supp.2d 821 (E.D.Pa.2000). See: Colburn v. Upper Darby Township, 838 F.2d 663 (3d Cir.1988)(an official policy may be inferred from informal acts or omissions of supervising municipal officials).

During the Preliminary Hearing on February 22, 1996, Defendant Washburn testified that there were four separate search warrants executed in this case. Two were executed at the Erie County Prison (DNA rape kit; Plaintiff's clothing). One was issued for Plaintiff's home, the other one for his car. Defendant Washburn personally served the ones for the rape kit and the Plaintiff's home.

Approximately **six-days** after Plaintiff's arrest, while he was in the Erie County Prison, Defendants Washburn and Durkin gained forcible entry into his home. The Defendants testified

that while searching upstairs they found a gun. The problem with these scenarios, the Defendants stretched the truth. No search warrant nor affidavit of probable cause existed for the Plaintiff's home. There was no exigent circumstances. See,e.g., Payton v. New York, 100 S.Ct. 1371 (1980)(it is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable).

The Plaintiff argues that the actions of the Defendants who entered his home resulted from the following official policies or customs of the Erie Police Department: allowing unconstitutional searches of private residents and other properties in violation of the Fourth and Fourteenth Amendments; providing inadequate training and supervision; and, directing the Defendants to conduct law enforcement activities in an unsavory manner.

As noted above and undisputed in numerous state and federal actions in related cases, Defendants lied to the Courts' about obtaining a valid search warrant for Plaintiff's home. The Defendants also ignores that the Plaintiff was arrested in his doorway, was handcuffed after an initial inquiry, and took to jail for further questioning. It simply cannot be ignored that after **six-days** the Defendants returned to the Plaintiff's home without a warrant, broke into his home and conspired with others to manufacture gun evidence they allegedly found upstairs. The same gun which the subsequent jury in September of 2004 found not remotely connected to the Plaintiff, hence acquitted him on all charges. Id.

## V. CONCLUSION

Based on the foregoing, judgment in this matter should be entered in favor of the Plaintiff as a matter of law, pursuant to Fed.R.Civ.P. 56.

*/s/ Warren Durham Jr.*
WARREN DURHAM JR.

6.