IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DURHAM, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-297 Erie |
| | ) |
| CITY AND COUNTY OF ERIE, et al., | ) |
| | ) **Electronically Filed** |
| Defendants. | ) |

### DEFENDANT TACKETT'S BRIEF
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This is a brief in support of a motion for summary judgment on behalf of Bruce Tackett.

### STATEMENT OF THE CASE

On October 6, 2004, following his acquittal in the Court of Common Pleas of Erie County, Pennsylvania, on a charge of rape, after a retrial resulting from the reversal of his earlier conviction for the offense by the U.S. Court of Appeals, Third Circuit in the context of its review of the denial of habeas corpus relief, the plaintiff Mr. Durham brought the instant federal civil rights action in this Honorable Court. Inter alia, Mr. Tackett, a veteran State Police criminalist at the Lawrence Park lab is a defendant in the action.

Mr. Durham claims herein that Mr. Tackett's alleged false testimony at his first trial, at which he was convicted, concerning the results of DNA testing on the complaining witness' rape kit, as part of a conspiracy with the assistant D.A. (Mr. McElynn) and the trial

judge (Judge Anthony) to frame him for the crime, deprived him of his right to a fair trail, presumably under the Fourteenth Amendment. Complaint, ¶¶ 33, 34. Mr. Tackett answered the complaint with inter alia, a general denial on December 21, 2004. This Court, sua sponte, originally dismissed the claim on the basis of the statute of limitations but then reconsidered the issue. Order of Court, January 11, 2006. A Statement of Undisputed Material Facts is contemporaneously filed. Mr. Tackett begs leave to dispense with a discussion of the well-settled standard for granting summary judgment.

**ARGUMENT**

I. **DURHAM HAS NO TENABLE CLAIM AGAINST TACKETT FOR VIOLATION OF HIS CIVIL RIGHTS BASED ON TAKETT'S CONDUCT IN THIS CASE.**

Mr. Durham complains that Mr. Tackett violated his right to a fair trial and conspired with the trial judge (Judge Anthony) and the prosecutor (Mr. McElynn) – neither of whom are currently parties in this case – to deny him right to a fair trial by fabricating DNA evidence "during the criminal trial of the plaintiff" on the charge of rape that showed the plaintiff had engaged in sexual congress with the complaining witness, on Jeanette Rattley.[1] Complaint at ¶¶ 33 and 34.[2]

---

[1] Judge Anthony apparently was never served with the complaint. Report and Recommendation (11/9/05); docket entry 20. Mr. McElynn has since obtained summary judgment in his favor from the Court. Memorandum order (3/16/02); docket entry 32.

[2] At his deposition on June 19, 2006, Mr. Durham essentially testified that these two paragraphs embody the full extent of his claims against Mr. Tackett. Id. at 78. He could add nothing to them at his deposition by way of particulars and expressly declined to do so. Id.

Mr. Tackett is a veteran State Police forensic scientist working out of PSP Lawrence Park Laboratory in Erie County. "Exhibit B" attached to the complaint is a lab report on the DNA testing done in Durham's case and its results that shows, however, that the actual DNA testing of the pertinent sample of bodily fluids obtained from the rape kit done on the complaining witness was actually not done by Mr. Tackett at the PSP's Lawrence Park, Pennsylvania forensic lab, located in Erie County where he works, but instead, was done by a Mr. Scott Emerick, another forensic scientist for the State Police, at the PSP's Greensburg, Pennsylvania forensic lab, located in Westmoreland County. Mr. Emerick did the lab report on the DNA testing. Furthermore, Mr. Tackett testified at the original trial in which Mr. Durham was convicted of rape, that he did not test the vaginal swab from Ms. Rattley's rape kit in any manner, in order to be able to send it on to the Greensburg lab in a relatively pristine condition in order for the DNA testing to be done on it there at the lab, and that he did not do any of the DNA testing in Mr. Durham's case on any of the rape kit samples.[3] Durham Deposition at 73-74. Mr. Tackett did do preliminary serological (i.e., blood type and blood enzymes) tests on rectal swabs from the kit and on Ms. Rattley's panties, obtaining consistent results for Durham's involvement. Id. These actions, however, are entirely unchallenged by Durham as are his pertinent trial testimony. But he did not do the DNA testing. He only testified as to the

---

[3] Nothing in the complaint or deposition indicates that Mr. Durham is complaining about Mr. Tackett's conduct at the second trial, or retrial, where he was acquitted, in addition to Mr. Tackett's testimony at the first or original trial, at which Mr. Durham was convicted. Mr. Durham could not attest to whether or not Mr. Tackett ever testified at the retrial much less what his testimony was or might have been, or how it might have harmed him at the retrial. According to Mr. Tackett's response to plaintiff's request for admissions, Mr. Durham's successful defense on retrial was consent. See Response to Plaintiff's Request for Admissions by Bruce Tackett (June 21, 2006). This is wholly consistent with the implication of his complaint in this case that Ms. Rattley was blackmailing him in making her rape charge. Id., ¶¶ 13 and 14. (Mr. Durham apparently was tried in absentia at his successful retrial.) Durham Deposition at 69. However, in that case the test results are immaterial.

contents of Mr. Emerick's report at Mr. Durham's first trial, so far as the record currently shows. Durham Deposition at 69, 76-77.

Mr. Emerick's report on the DNA testing is Exhibit B of plaintiff's complaint. Comparing it to Mr. Tackett's testimony about it yields the conclusion that it does in fact say precisely what he testified at trial that it said. It should also be noted that Mr. Durham, despite Judge Anthony's express invitation, made no effort, when acting as his own counsel, to confront Mr. Tackett's testimony. Id. at 77. Finally, Mr. Tackett's response to plaintiff's requests for admissions plainly comprehensively and categorically denied that he gave false testimony at Durham's trial. If the defense is consent, moreover, how can the testimony be materially false?

Be that as it may, since all that Mr. Tackett either is or ever can be accused of doing (since Mr. Emerick did the actual DNA tests and wrote the report on them) is giving false testimony at Mr. Durham's first trial there is no actionable Section 1983 claim conceivably able to be presented against him, even assuming in arguendo false testimony was given.[4] This is the rule in Briscoe v. LaHue, 460 U.S. 325 (1983) a prosecution witness in a criminal trial is absolutely immune from civil right liability based on a claim that his testimony was perjury. Id. Mr. Durham has no tenable claim for relief. A claim of conspiracy to commit perjury is treated no differently.

---

[4] It, in effect, is all that is alleged by plaintiff now that discovery has closed, i.e., that he lied about the DNA test results in his trial testimony. It is not disputed that he did not actually do the DNA tests in his case. He does not dispute Mr. Emerick did them. At his deposition, Mr. Durham essentially eschewed the idea that he was complaining that Mr. Tackett had done anything else to him. Mr. Durham's allegations and proffered proof, such as it is, are confined to the claim Mr. Tackett falsely testified about the DNA results at his trial in aid of the conspiracy to deprive him of a fair trial. There is no claim or "proof" of anything else.

4

The supporting authority for taking this position is legion. Franklin v. Terr, 201 F.3d 1098, 1102 (9th Cir. 2000) ("In concluding that the rule in Briscoe applies to allegations of conspiracy to commit perjury by someone who has testified as a witness in the proceeding where the perjury took place, or was to take place, we join six circuits that have reached the same conclusion.") (collecting cases); Marshall v. Odom, 156 F.Supp. 2d 525, 534 (D. Md. 2001) (collecting cases). Courts have observed that Briscoe's rationale remains vital and is equally applicable despite the allegation that the perjury was either the object of a conspiracy or an act in its furtherance. Id. (collecting cases). Meanwhile the constraints of rule in Briscoe forbidding a civil rights action and damage recovery based on an allegation of perjury could be easily slipped by means of the mere pleading artifice of an allegation that the perjury was part of a conspiracy. These Courts have been expressly concerned with preventing the potential for development of this approach as a legal subterfuge to the detriment of the Briscoe rationale.

The Third Circuit is squarely in accord with the idea that the rule in Briscoe and its rationale requires vigorously rejecting the concept that perjury is actionable in a civil rights case in the context of a conspiracy. It has been so for quite a while. Kuliwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992); Williams v. Hepting, 844 F.2d 138 (3d Cir. 1988). Our circuit's decisions emphasize the breadth of the protections against civil rights liability for their testimony that Briscoe should afford to all witnesses – both police and lay – in a criminal case. This protection extends to testimony in all adversarial pretrial proceedings including the preliminary hearing, and there is no exception to it for a police officer who is the chief or "complaining" witness. See Kuliwicki, supra at 1467, n.16; see also, Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999) (rejecting the complaining witness exception); see, Williams, supra (Briscoe applies to the preliminary hearing); see also Holt v. Castaneda, 832 F.2d 123 (9th Cir. 1987) (same).

5

This law applies equally where a conspiracy is alleged under 42 U.S.C. § 1985(3) as it plainly does in the case of one alleged under Section 1983, although Briscoe did not specifically resolve the issue. E.g., Holmes v. Wasmer, 1989 WL 66347 (E.D.Pa.). Justice Stevens in the Briscoe majority opinion, however, discusses the Congressional history of the antecedent to Section 1985(3). He notes in the opinion for the Court that, so far as the legislative history shows, the apparent intent of the Reconstruction, Congress is passing it in 1871 seems to have been to provide relief when a jury sympathetic to the Ku Klux Klan acquitted one of its "hooded bigots" of racially-motivated criminal conduct. Id. at 337. (One may reflect sadly on the persistence of this evil down into our times as manifested in many criminal trials of racist criminals during the Civil Rights era in the Deep South – such as the notorious state trial of the murderers of Emmett Till.) Perjury resulting in a "frame-up" or unjust conviction, by the reverse implication of all this history, nevertheless, should still or rather must still remain, impervious to treatment as a civil rights case for a tort recovery even where racial discrimination is alleged because the rationale for the rule in Briscoe is just too important for any such exception to be made. "[T]he claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of the truth should be left as free and unobstructed as possible" and unaffected by the witnesses' apprehension of possible tort liability based on his testimony. Id., 322-333. The harm is addressed by criminal charges alone, which were punishable as a conspiracy even in the traditional common law. Briscoe, 460 U.S. at 339, n.22.

**CONCLUSION**

Because Mr. Durham has no claim for recovery of money damages against Mr. Tackett, even had he conspired to testify falsely against him at his trial and had committed perjury in his testimony at trial, Mr. Tackett is entitled to summary judgment in his favor. Of course Mr. Tackett did nothing of the sort, but even if he had it would not afford plaintiff a claim for relief.

WHEREFORE, it is respectfully requested that the motion for summary judgment be granted.

Respectfully submitted,

**THOMAS W. CORBETT, JR.**
**Attorney General**

By:   s/Kemal Alexander Mericli
Kemal Alexander Mericli
Senior Deputy Attorney General
Attorney I.D. No. 27703

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA   15219

Date:  July 11, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Defendant Tackett's Brief In Support of Motion for Summary Judgment was served upon the following via electronic/first-class mail on July 11, 2006.

Warren Durham, Jr.
12119 Matherson Avenue
Cleveland, OH   44135

Edmond R. Joyal, Jr., Esquire
Law Office of Joseph S. Weimer
975 Two Chatham Center
Pittsburgh, PA   15219

Mark E. Mioduszewski, Esquire
Tracey D. Bowes, Esquire
120 West Tenth Street
Erie, PA   16501-1461

                                                    s/Kemal Alexander Mericli
                                                    Kemal Alexander Mericli
                                                    Senior Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

Date: July 11, 2006