IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WARREN DURHAM JR., ) C.A. No. 04-297 E
        Plaintiff )
   V. ) District Judge McLaughlin
 )
CITY AND COUNTY OF ERIE, )
ET AL.      Defendants.

### OBJECTION TO REPORT AND RECOMMENDATION

On February 3, 2007 the Plaintiff received from Magistrate Judge Susan Paradise Baxter the Report and Recommendation in regard to a civil rights lawsuit pursuant to 42 U.S.C. Section 1983 filed by Plaintiff claiming that his constitutional rights were violated by Defendants.

The Magistrate Judge is recommending that the motion for summary judgment filed by Defendants Bruce Tackett, City of Erie, Patrick Durkin and James Washburn be granted.

### I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On October 6, 2004 Plaintiff filed a civil action action against Defendants pursuant to section 1983. This action resulted from the denial of constitutional rights to a fair trial; failure to train or supervise police officers; and allowed unreasonable search by its police officers; fabrication of DNA evidence, and conspiracy with other Defendants.

On May 27, 2004 the United States Court of Appeals for the Third Circuit reversed Plaintiff's criminal conviction. On September 21, 2004 the Plaintiff was retried, subsequently on September 22, 2004 found not guilty by jury of all charges.

### II. OBJECTIONS

#### A. DEFENDANT BRUCE TACKETT:

It is axiomatic that section 1983, by its terms, applies not only to a person who "subjects," but also to any person who "causes to be subjected ... any citizen of the United States to the

1.

deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. Section 1983. The Due Process Clause of the Fourteenth Amendment is the source of this right to be free from deprivation of liberty, and the manufacture of false evidence by a government officer. Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir.2004).

In Pierce, the Court of Appeals held that wrongfully convicted plaintiff, who alleged that police department forensic chemist maliciously withheld exculpatory evidence and fabricated inculpatory evidence, stated claim under section 1983 for constitutional tort of malicious prosecution; fact that forensic chemist neither initiated nor filed the charges against plaintiff did not preclude the claim.

A similar analysis applies under the Due Process Clause. The Supreme Court has held that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction. Pyle v. Kansas, 63 S.Ct. 177 (1942). See: Spurlock v. Satterfield, 167 F.3d 995 (6th Cir 1999), rejecting qualified immunity where officer allegedly fabricated evidence and manufactured probable cause. There is no moral difference between providing phony evidence in support of an arrest and providing phony evidence in support of continued confinement and prosecution. See also: Forrester v. White, 108 S.Ct. 538 (1988), highest executive officials in states are not protected by absolute immunity from damage liability arising from their official acts under federal law.

When evaluating a qualified immunity defense, after identifying the constitutional right allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place. No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1996, Plaintiff's criminal trial and conviction. See: Hope v. Pelzer, 122 S.Ct. 2508 (2002).

Qualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understanding of the law at the time of their actions, from personal liability. Defendant Tackett misconduct did not stem from a miscalculation of his constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry. Rather,

as alleged, Tackett engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man. <u>Saucier v. Katz</u>, 121 S.Ct. 2151 (2001); <u>Harlow v. Fitzgerald</u>, 102 S.Ct. 2727 (1982)(under the qualified immunity doctrine, a government official will be lliable only if the plaintiff can show that the official violated clearly law of which a reasonable person should have known).

Accordingly, as Defendant Tackett is not immune from liability, Plaintiff's motion for summary judgment against Mr. Tackett should be granted.

### B. DEFENDANT WASHBURN AND DURKIN:

According to the Magistrate Judge's analysis, Plaintiff's allegations of the denials of due process and his right to a fair trial flow from a two-fold Fourth Amendment violation:

### a). Expiration of the Search Warrant

It is undisputed that Defendants Washburn and Durkin conducted the search of Plaintiff's home. That the warrant is numbered J15086 and the date of application is listed as January 23, 1996. It is further alleged by Defendants that the actual search of the residence was January 23, 1996.

The Plaintiff, however, alleges that his home was searched on January 29, 1996. That the search warrant issued on January 23, 1996 had expired, and said search violated his constitutional rights.

A clear reading of Defendant's document #64-2 demonstrate that Defendants entered Plaintiff's home on several occasions while Plaintiff was in jail, that Donald Durham and boarder Henry Johnson were not home:

> **"[T]he warrant on the home was served at a time when the owner was not present and the police made entry after announcing their presence <u>on more than one occasion</u>."**

Id. At Document 64-2 (emphasis added).

Moreover, the Defendants in their response to Plaintiff's request for Admissions (Def. Exhibit A), confirmed **"That an Affidavit of Probable Cause was secured from the court pursuant to the issue of a search warrant to search Plaintiff's house on or about January 29, 1996."**

Seemingly, common sense would dictate that once entering Plaintiff's home on January 23, 1996 while the family was not present, there would be no further need to continue entering since the gun was allegedly found by Defendants. Obviously, the Fourth Amendment requirements are not adhered too by Erie police officers. See: <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)(the non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents to meet his burden).

Accordingly, Plaintiff should be granted summary judgment as to this claim.

### b). Scope of Warrant

For a search warrant to be valid, the Fourth Amendment require a warrant particularly describe the place to be searched, and person or thing to be seized. <u>Horton v. California</u>, 110 S.Ct. 2301 (1990). Moreover, a search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units. A warrant directing a search of more than one living unit is valid only if there is probable cause that all are being used for the unlawful purposes involved. See: <u>In Interest of Wilks</u>, 613 A.2d 577 (Pa.Super.1992), the search warrant failed to describe the premises to be searched with sufficient particularity because neither the search warrant nor the supporting affidavit of probable cause mentioned the number of rooms to be searched. <u>Maryland v. Garrison</u>, 107 S.Ct. 1013 (1987). A warrant authorizing the search of an entire multi-unit building is fatally defective when the warrant authorizes the search of an entire structure and the officers do not know which unit contains the evidence of illegal conduct.

The Defendants testified at Plaintiff's criminal trial, essentially stating that while upstairs in the northeast bedroom, there was a closet door leaning against the door frame. That *"to get*

*into that closet, you had to physically lift the door up and set it to the side to look into the closet."* (Exhibit A) There the Defendants allegedly found a gun which was later admitted into evidence.

It must be noted that there are three bedrooms on the second floor and living quarters on the third floor which the Plaintiff occupied. When Defendants inquired as to which living area Plaintiff lived, during his arrest, this information was supplied to them.

Contrary to the Magistrate Judge's opinion, the Supreme Court as well as all lower courts have held that a search of more than one living unit in a multi-occupany structure, not described in the warrant is invalid. <u>Horton</u>, supra. It is clear that Defendants were not permitted to search Plaintiff's entire home, absent a valid warrant describing the exact place to be searched.

Accordingly, the motion for summary judgment should be granted as to the Plaintiff and against Defendants.

## C. <u>DEFENDANT CITY OF ERIE:</u>

Because Plaintiff has a viable claim against Defendants Washburn and Durkin in that the search warrant was invalid and its scope was exceeded, Plaintiff's claim against the City of Erie should prevail. Accord the Magistrate Judge's reasoning for granting summary judgment to Defendant City of Erie.

Accordingly, the motion for summary judgment should be granted Plaintiff and against the City of Erie.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff respectfully request that his motion for summary judgment against all Defendants be granted.

Respectfully submitted,

*Warren Durham Jr.*
WARREN DURHAM JR.

DATED: 1/8/07

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN DURHAM JR., | ) | C.A. No. 04-297E |
| Plaintiff | ) | |
| V. | ) | District Judge McLaughlin |
| | ) | |
| CITY AND COUNTY OF ERIE, | ) | |
| ET AL.          Defendants | | |

### CERTIFICATE OF SERVICE

I, Warren Durham Jr., hereby certify that a true and correct copy of the foregoing "Objection to Report and Recommendation" was served upon the persons named below by:

**FIRST CLASS MAIL:**

Kemal Alexander Mericli, Esq.
564 Forbes Avenue
Pittsburgh, Pa. 15219

Edmond R. Joyal, Esq.
975 Two Chatham Center
Pittsburgh, Pa. 15219

*/s/ Warren Durham Jr.*
WARREN DURHAM JR.
12119 MATHERSON AVE.
CLEVELAND, OH. 44135

DATED: 1/8/07

60

1    A.    Yes, I did, with another officer.

2    Q.    And can you tell us if you located a handgun in
3 the second floor, in an area of the second floor of the
4 house at 2304 French Street?

5    A.    Yes, sir, I did.

6    Q.    Can you tell us how you happened to find that gun?

7    A.    As I was in the northeast bedroom, there was a
8 closet door that was off its hinges and not locked.  It was
9 leaning against the door frame, I would assume.  And to get
10 into that closet, you had to physically lift the door up and
11 set it to the side to look into the closet.

12          As I was doing this, this door had a blue blazer
13 sports coat on a hangar hanging on top of it.  As I went to
14 move the door, the sports coat swung and banged back into
15 the door like there was something in the pocket.  I looked
16 in that pocket, and I found a handle of a revolver hanging
17 out of the sports coat in the inside pocket.

18    Q.    Officer, I'm going to show you what I've marked as
19 Commonwealth's Exhibit 1.  And ask you if you've seen this
20 before and if you can identify it for us?

21    A.    Yes, sir, this is the pistol that was in the
22 pocket of the sports coat in the bedroom.

23    Q.    And that is the handgun that you found?

24    A.    Yes, sir, it is.

25    Q.    And subsequently placed into evidence?